IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENERAL UNIVERSAL SYSTEMS, INC. WORLD TRADE SYSTEMS, INC., and JOE A. LOPEZ, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. H-95-1582 |
| HAL, INC., JOE R. HERRIN, ERNEST PARKIN, PANALPINA, INC., FRITZ COMPANIES, INC., GLOBAL SOUTHPORT SERVICES, INC., U.S. CRATING, INC., THE REX GROUP, INC., TRANSWORLD LOGISTICS, INC., and DAHAR GOLDEN EAGLE, INC., | § § § § § § § § § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

Before the Court[1] is Defendants Hal, Inc., Joe R. Herrin, and Ernest Allen Parkin's Motion for Final Summary Judgment (Document No. 571), and Defendants' Supplemental Motion for Final Summary Judgment (Document No. 585). In the motion and supplemental motion, Defendants argue that summary judgment is warranted, on the basis of their statute of limitations defense, on Plaintiffs' trade secret theft claim, the sole claim remaining in this case. Having considered the motion and memorandum in support (Document Nos. 571 & 572), Plaintiffs' response in opposition and Motion for Continuance (Document No. 575), the parties' additional briefing (Document Nos. 581, 583, 584, 585, and 587), two of the District Court's previous orders in this case (Document Nos. 343 & 397),

---

[1] On November 2, 2004, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 578.

the Order of the Fifth Circuit Court of Appeals (Document No. 559), and the alleged factual basis for Plaintiffs' remaining trade secret theft claim, the Court ORDERS, for the reason set forth below, that Defendants' Motion for Final Summary Judgment is GRANTED.

I.  **Background and Procedural History**

This case was filed in 1995 as essentially a copyright infringement case. In June 1998, the District Court granted summary judgment on the copyright claims (Document No. 308). In addition, summary judgment was granted on Plaintiffs' Lanham Act claim and most of the state law claims. Plaintiffs' breach of contract claim was tried to a jury in 2000. The jury found in favor of Plaintiffs, but the District Court granted Defendants a judgment notwithstanding the verdict. Plaintiffs appealed various issues and claims to the Fifth Circuit Court of Appeals. In an opinion entered on July 20, 2004, the Fifth Circuit, while upholding the District Court in most respects, reversed the District Court's dismissal of Plaintiffs' "trade secret claim," and remanded that sole claim for further proceedings. *See* Document No. 559 ("we affirm the decisions of the district court, reversing only the district court's dismissal of General Universal's trade secret claim in Case Number 01-21114. We remand that claim to the district court for further proceedings not inconsistent with this opinion.").

The allegations and factual background are set forth in detail in the District Court's previous orders as well as the opinion of the Fifth Circuit Court of Appeals. To provide a context for Defendants' Motion for Final Summary Judgment on the sole remaining claim in this case, the Fifth Circuit's synopsis of the background facts is set forth as follows:

> In 1979, GUS [General Universal Systems, Inc.] developed a software system – the CHAMPION PACKER Computer Software Program – for one of its clients, Joe Lopez. The CHAMPION PACKER program was a tracking system designed for use in the freight forwarding and shipping industry. GUS licensed the software to Lopez, retaining all rights to any improvements in the program, and eventually

> obtained a copyright registration in 1981.
>
> Sometime later, Lopez created a derivative version of CHAMPION PACKER by converting it from the BASIC 4 programming language to the COBOL language, and began selling his version, LOPEZ COBOL, as a replacement for CHAMPION PACKER. In 1992, he formed a venture called HAL, Inc. with Ernest Parkin and Joe Herrin to develop and market a new freight software system that incorporated bar coding technology. Under their agreement, Lopez was to contribute LOPEZ COBOL for use in developing the new system; Parkin was to provide the system design and programming expertise; and Herrin was to supply industry expertise. Lopez, however, was detained in a Mexican jail for seven months during the initial stages of the software development project, and he was ousted from the company without recompense in March 1993. HAL continued to work on the software system and eventually began selling a freight tracking system called "MEPAW."
>
> Lopez claimed that MEPAW was an unauthorized copy of LOPEZ COBOL and that Parkin and Herrin had breached their obligation to compensate him for providing the LOPEZ COBOL system. Under threat of litigation from GUS, Lopez assigned his contract claim to GUS and agreed to assist GUS with a copyright infringement suit against HAL, Parkin, and Herrin. GUS filed its first suit against HAL on May 23, 1995 ("GUS 1"), raising various claims under federal and state law. This focus of the case, however, was GUS's claim that HAL had infringed its copyright in the CHAMPION PACKER system by copying the LOPEZ COBOL system.

Document No. 559 at 5-6. With respect to the reversal of the District Court's dismissal of the "trade secret theft" claim, the Fifth Circuit wrote:

> GUS next contests the district court's dismissal of its state law claim of trade secret theft. Shortly before trial, HAL filed a summary judgment motion on this issue, arguing that GUS could not prove all of the essential elements of its claim. The district court agreed, disposing of GUS's claim on two alternative grounds. First, the court concluded that Texas law requires that the claimed trade secret have been discovered through improper means. The court found no improper means in this case because the HAL Defendants obtained access to the LOPEZ COBOL System pursuant to a written agreement with Lopez. Second, the court observed that Texas law requires that a person asserting a trade secret must take reasonable precautions to protect the claimed trade secret. The court found that the undisputed evidence showed that GUS had failed to do so. Based on these two alternative grounds, the court concluded that LOPEZ COBOL, "was not properly protected as a trade secret."
>
> GUS argues that the court applied an outmoded and overly restrictive test for trade secret misappropriation. We agree.

A.

We review a district court's interpretation of state law *de novo*. To state a claim for trade secret misappropriation under Texas law, a plaintiff must (1) establish that a trade secret existed; (2) demonstrate that the trade secret was acquired by the defendant through a breach of a confidential relationship or discovered by improper means; and (3) show that the defendant used the trade secret without authorization from the plaintiff. Only the first and second factors of this test are at issue in this appeal. "The existence of a trade secret is properly considered a question of fact to be decided by the jury or jury as fact-finder."

B.

The district court first concluded that GUS could not prevail under the first prong of the trade secret theft test. The court held that Texas law requires that a person asserting a trade secret take reasonable precautions to protect it. The district court concluded that Lopez did not take reasonable measures in this case, and concluded that LOPEZ COBOL was not properly protected as a trade secret.

The Texas Supreme Court recently clarified that to determine whether there is a trade secret protected from disclosure or use, a court must examine six relevant but nonexclusive criteria: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and his competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. The court expressly held that "the party claiming a trade secret should not be required to satisfy all six factors because trade secrets do not fit neatly into each factor every time." Determining whether any given piece of information is entitled to trade secret protection, then, is a contextual inquiry which must evaluate a number of factors.

The district court did not engage in this broad inquiry, but instead focused solely on Lopez's alleged failure to take "reasonable precautions" to protect LOPEZ COBOL, pointing to Lopez having allowed Parkin to copy LOPEZ COBOL onto a personal computer and take it with him to Arizona. The court, however, overlooked the fact that Lopez and Parkin were engaged in a joint venture to exploit that very software. There was also uncontroverted evidence that Lopez carefully secured his software system from parties *other* that Herrin and Parkin – that is, that Lopez took reasonable precautions to protect LOPEZ COBOL from persons other than those selected by Lopez to have access for limited purposes.

Further factual development may shed light on whether trade secret protection is appropriate. We conclude, therefore, that a genuine dispute of material fact precludes determination whether LOPEZ COBOL was properly protected as a trade

secret.

Summary judgment may yet have been appropriate if the district court's second basis for judgment independently bars GUS's claim. As an alternative basis for dismissing GUS's trade secret claim, the court concluded that GUS could not satisfy the second prong of the trade secret claim. Specifically, the court concluded that HAL did not acquire LOPEZ COBOL through improper means.

However, Texas trade secret law does not impose liability only when improper means are used. Under Texas law, there is liability for trade secret misappropriation if *either* "(a) he discovers the secret by improper means, *or* (b) his disclosure or use [of the trade secret] constitutes a breach of confidence reposed in him by the other in disclosing the secret to him." The district court did not consider whether there was a confidential relationship among Lopez, Perkins, and Herrin that imposed upon them a duty not to use the trade secret. There may have been an appropriate confidential relationship: although the facts available in the record are unclear, it appears that Lopez, Perkins, and Herrin may have formed a partnership to exploit the LOPEZ COBOL system. Under Texas law, a partnership can be considered a confidential relationship, and participants in a joint venture are often held to owe duties to one another.

HAL, for its part, vigorously asserts that there was no confidential relationship among the parties. HAL also contends that the district court reviewed the entire record and found that HAL's use of the LOPEZ COBOL was unrestricted, an assertion which finds no support in the text of the district court's opinion. In the end, HAL's argument highlights the presence of disputed material facts.

The district court erred in not considering whether GUS might prevail by demonstrating a breach of a confidential relationship. On the present record, there is a genuine issue of material fact and summary judgment was inappropriate.

Document No. 559 at 32-38 (footnotes omitted).

**II.    Defendants' Motion for Final Summary Judgment**

Defendants argue that summary judgment is warranted on Plaintiffs' theft of trade secrets

claim, the sole claim remaining in this case, on the basis of the statute of limitations. According to Defendants, Plaintiffs' trade secret theft claim is subject to a two year statute of limitations, which commenced in March 1993, and expired two years later, in March 1995, two months before this case was filed. In support of this limitations defense, Defendants point to the April 7, 1999, Order of the District Court (Document No. 397), in which the Court found that Plaintiffs' claims for misappropriation and conversion were barred by the same two year statute of limitations, a ruling which was not challenged by Plaintiffs on appeal. That prior ruling by the District Court, Defendants maintain, constitutes the "law of the case" and compels a similar ruling on the limitations defense with respect to Plaintiffs' trade secret theft claim. In addition, Defendants maintain, notwithstanding the District Court's previous limitations ruling, that the evidence conclusively establishes that Plaintiffs' trade secret theft claim accrued in March 1993, more than two years before this case was filed. Finally, and in the alternative, Defendants argue that there is no summary judgment evidence of a confidential or fiduciary relationship between Lopez, Parkin and Herrin, an essential element of Plaintiffs' trade secret theft claim.

In response to Defendants' Motion for Summary Judgment, Plaintiffs argue that the law of the case doctrine does not apply, that Defendants have not demonstrated, as a matter of law, that Plaintiffs' trade secret theft claim accrued by virtue of Defendants' "actual use" of the trade secret more than two years before this case was filed, and that there is evidence that there existed a confidential and/or fiduciary relationship between Lopez, Parkin and Herrin.

### III.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This standard provides that the mere existence of some factual dispute will not defeat a motion for summary judgment. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir. 1993); *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir. 1992). Rather, Rule 56 mandates that the fact dispute be genuine and material. *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 314 (5th Cir. 1995). The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (*citing United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *Kelley v. Price Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir. 1993); *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

  The party moving for summary judgment bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986). Once this burden has been met, the non-moving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist and that it consists of more than bare allegations in briefs and pleadings. *Anderson*, 477 U.S. at 250. The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 325. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Once the parties have submitted evidence of contradictory facts, justifiable inferences are to be drawn

in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255.

Even if the standards of Rule 56 are met, a court may deny a motion for summary judgment if, in its discretion, it determines that "a better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 257; *Veillon v. Exploration Services, Inc.*, 875 F.2d 1197, 1200 (5th Cir. 1989).

**IV.   Discussion**

The parties do not dispute that a two year statute of limitations applies to Plaintiffs' trade secret theft claim.[2]  What the parties do dispute is when Plaintiffs' trade secret theft claim accrued for purposes of the two year statute of limitations.  Defendants maintain that the claim accrued in March 1993, when Lopez was denied access to his computer and the LOPEZ COBOL system that was on that computer, the same date the District Court found as the accrual date for Plaintiffs' misappropriation and conversion claims.  Plaintiffs, on the other hand, maintain that their cause of action accrued when Defendants actually used the trade secrets, a date which is not necessarily the same as the date upon which their misappropriation and conversion claims accrued.

In the Order entered on April 7, 1999 (Document No. 397), the District Court determined that Plaintiffs' misappropriation and conversion claims, which were predicated on the "allegation that the HAL Defendants denied Lopez's son access to Lopez's computer system", were time barred.  In so doing, the District Court wrote:

> Plaintiffs allege that "Plaintiff Lopez was denied access to his software when his agent came to use the software and discovered that his user identification and passwords had been changed" and that "Plaintiff Lopez was denied access to this

---

[2]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 1995). While the limitations period by statute is now three years, it was two years at the time this case was filed. The Texas Supreme Court has decided that the new three year limitations period does not relate back or apply to cases prior to the statutory change. *Baker Hughes, Inc. v. Keco R&D, Inc.*, 12 S.W.3d 1, 5 (Tex. 1999)

software when his agent came to pick up his system and was refused." (Joint Pretrial Order, p. 8). Plaintiffs' support for these allegations is Lopez's hearsay affidavit that the denial of access occurred in connection with the "ouster" of Lopez from Hal, Inc. in March 1993.

>    The Texas statute of limitations for conversion and misappropriation is two years. Tex. Civ. Prac. & Rem. Code § 16.003; *Daboub*, 42 F.3d at 290. Plaintiffs filed their complaint on May 29, 1995, and Lopez joined as a party plaintiff in October 1995, more than two years after the "denied access" conversion and misappropriation claims accrued. The claims are dismissed as time-barred.

Document No. 397 at 5 (footnote omitted).

The District Court's determination in April 1999, that Plaintiffs' misappropriation and conversion claims were time-barred was based on the characterization of those claims in the Joint Pretrial Order that was filed on November 19, 1998 (Document No. 354). Because the trade secret theft claim had been dismissed earlier, in September 1998, when the earlier version of the parties' Joint Pretrial Order (Document No. 295) governed the claims in this case, consideration of Plaintiffs' trade secret theft claim, and Defendants' limitations defense thereto, must be based on the allegations in the earlier Joint Pretrial Order that was on file at the time.

In the Joint Pretrial Order filed on May 12, 1998, Plaintiffs alleged as follows with respect to their trade secret theft claim:

>    a.   The HAL defendants wrongfully exercised dominion over the Lopez COBOL system by wrongfully copying the system.
>    b.   The wrongful copying of the LOPEZ COBOL system by the Defendants was done in contravention to Plaintiff Lopez's rights.
>    c.   The LOPEZ COBOL system is based on information taken from the Champion Packer system owned by GUS.
>    d.   Plaintiff Lopez was denied access to his software when his agent came to use the software and discovered that his user identification had been changed.
>    e.   Plaintiff Lopez was denied access to his software when his agent came to pick up his system and was refused.
>    f.   Defendants Panalpina, Inc., the Fritz Companies, Inc., U.S. Crating, Inc. and Transworld Logistics, Inc. engaged in trade secret theft when they accepted and made use of wrongfully obtained copies of the

        LOPEZ COBOL system, in contravention of Plaintiff Lopez's rights.
- g. The creation of the Champion Packer and Lopez COBOL systems occurred through extensive time, labor skill and money.
- h. Plaintiff Lopez and Dr. Nassar spent up to 18 hours a day, sometimes seven days a week working on developing the Champion Packer system, and it took about a year to develop a finished product.
- i. General Universal Systems never provided any vendor or customer with the source code to the Champion Packer system.
- j. The Champion Packer computers required passwords for a person to have access to the source code of the Champion Packer system, and the office where the system was located had a lock on the door.
- k. In the development of the LOPEZ COBOL system, the same type of work and effort was put into converting the Champion Packer system as was put into originally setting up the system by General Universal Systems, Inc.
- l. The programmers who developed the LOPEZ COBOL system worked up to 18 hour days, sometimes seven days a week.
- m. Plaintiff Lopez paid for the programmers who assisted in the development of the LOPEZ COBOL system approximately $200,000.
- n. The LOPEZ COBOL system was kept on a computer which had a password, and was kept, this time behind a double locked door. The building was patrolled by a night watchman.
- o. Until Plaintiff Lopez made an agreement with the HAL Defendants regarding the use of the LOPEZ COBOL system, there was only one copy of the system, and a back-up copy which was kept in a closet at Plaintiff Lopez's house out of reach and out of the way.
- p. The Defendants made use of the MEPAW system in competition with the Plaintiffs, thereby gaining a special advantage in that competition.
- q. Plaintiffs suffered commercial damage as a result.
- r. The Defendants acted with knowledge, reckless disregard and/or wilfully in their action.
- s. Defendants treat MEPAW as a treat secret.
- t. Plaintiffs are entitled to lost profits.
- u. Plaintiffs brought this lawsuit within the applicable statute of limitations.

Document No. 295 at 17-20.

Texas law provides a cause of action for trade secret theft that is distinct from a claim of trade secret misappropriation. The Texas Theft Liability Act, *see* TEX. CIV. PRAC. & REM. CODE ANN. § § 134.001 et seq., provides a civil action for damages against an individual, partnership, corporation, association, or other group for "unlawfully appropriating trade secrets, as defined by section 31.05

of the Texas Penal Code." To establish a claim for trade secret theft under the Texas Theft Liability Act, the trade secret in question must be (1) all or part of scientific or technical information, (2) of value to the owner, (3) protected from access by measures taken by the owner to all, except those selected by the owner for limited purposes. *McGowan v. State*, 938 S.W.2d 732, 738 (Tex. App. - Houston [14th Dist.] 1997), *affirmed sub nomine*, *Weightman v. State*, 975 S.W.2d 621 (Crim. App. 1998).

Claims based on the doctrine of common-law misappropriation, however, are not trade secret claims *per se* because there is no requirement of secrecy. To establish a claim for trade secret misappropriation, the following must be proven: (1) the existence of a trade secret; (2) that the trade secret was acquired through breach of confidential relationship or discovered by improper means; (3) the use of a trade secret without authorization from the plaintiff; and (4) damages. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir.1991), *aff'd*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *H.E. Butt Grocery Co. v. Moody's Quality Meats, Inc.*, 951 S.W.2d 33, 34 (Tex.App.1997).

Despite the substantive difference of secrecy, claims of trade secret theft and trade secret misappropriation were both, at the time this case was filed, governed by a two year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003; *Daboub*, 42 F.3d at 290. Under that two year statute of limitations, Plaintiff had two years from the date his cause of action for trade secret theft accrued to file suit.

Under Texas law, "[a] cause of action accrues when facts come into existence authorizing a claimant to seek a judicial remedy and the aggrieved party knows or should know of the existence of these facts". *Sharpe v. Roman Catholic Diocese of Dallas*, 97 S.W.3d 791, 796 (Tex. App.-Dallas 2003); *see also Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex.App.- Dallas 1995,

writ denied). With respect to claims for trade secret theft and trade secret misappropriation, in particular, a cause of action "accrues when the trade secret is actually used." *Computer Associates Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).

Plaintiffs do not allege, *per se*, when the trade secret(s) at issue were actually used by Defendants. They do allege, however, that "Plaintiff Lopez was denied access to his software when his agent came to use the software and discovered that his user identification had been changed." (Document No. 295 at 17). In addition, there is summary judgment evidence that "Plaintiff Lopez was denied access to his software when his agent came to pick up his system and was refused." (Document No. 295 at 17). These allegations, at least with respect to the timing of Lopez's ouster from Hal, Inc. and Defendants' retention of Lopez's computer and the contents thereof, have not been controverted by Defendants.

In *Gareth v. Staktek Corp.*, 876 S.W.2d 545, 548 (Tex. App.–Austin 1994, writ dism'd w.o.j.), the Texas Court of Appeals held that "[a]ny misappropriation of trade secrets, followed by an exercise of control and dominion, is considered a commercial use." While *Gareth* did not deal with the two year statute of limitations for trade secret theft/misappropriation claims or the accrual date for such claims, *Gareth* does provide a clear statement of Texas law as to what constitutes actual use of a trade secret. That statement of the law has been used by other courts to determine the accrual date for claims of trade secret theft/misappropriation. *See e.g., Tavana v. GTE Southwest Inc.*, 1999 WL 512624 (Tex. App.–Dallas 1999).

Here, it is undisputed that Plaintiffs' alleged trade secrets were contained on the computer which Lopez sought, through his son, to retrieve from Defendants in March 1993. In addition, it is undisputed that the business relationship between Defendants and Lopez was effectively terminated in March 1993. Based on those undisputed facts, Plaintiffs' cause of action for trade secret theft

accrued in March 1993, when Defendants exercised dominion and control over the alleged trade secrets, approximately two years and two months before this lawsuit was filed. Therefore, Plaintiffs' trade secret theft claim, like Plaintiff's misappropriation and conversion claims, are time-barred.[3]

### IV. Conclusion and Order

---

[3] Plaintiffs' argument that its trade secret theft claim can be considered as a continuing tort for purposes of the limitations period is an argument which has been rejected by Texas courts in *Tavana v. GTE Southwest Inc.*, 1999 WL 512624 (Tex. App.–Dallas 1999); *see also Skytop Brewster Co. v. Skytop Intern., Inc.*, 1993 WL 721287 (S.D. Tex.).

Because Plaintiff GUS's claims accrued in March of 1993 and are time barred, it is

ORDERED that Defendants' Motion for Final Summary Judgment (Document No. 571) is GRANTED, and Plaintiff's claim for trade secret theft is dismissed. It is further ordered that Plaintiff's motion for continuance (Document No. 575) is DENIED as moot.

Signed at Houston, Texas, this 29th day of July, 2005.

Frances H. Stacy
United States Magistrate Judge